3

FILED
FEB 25 2026
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Fee
NP
IFPP

**Gary Dartez**
20 E 16th St. #203
Antioch, CA 94509
Gary.Dartez.Email@gmail.com

Plaintiff in Pro per

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY DARTEZ,<br><br>Plaintiff.<br><br>v.<br><br>AT&T INC. a Delaware Corporation; AT&T SERVICES, INC., a Delaware Corporation; and AT&T MOBILITY LLC, a Delaware Limited Liability Company.<br><br>Defendants. | **Case No.** C26-01646 AGT<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**<br><br>(Individual Action – Data Security, Privacy, and Consumer Protection)<br><br>Honorable ____________<br><br>Action File: February 25, 2026<br><br>**DEMAND FOR JURY TRIAL** |

NP

## I. INTRODUCTION

1. This is an individual consumer data-security and privacy action arising from Defendants' failure to implement and maintain reasonable safeguards for extremely sensitive customer information, resulting in exposure of Plaintiff's permanent identity identifiers, authentication credentials, billing identifiers, and account-linked metadata sufficient to enable identity theft, SIM-swap and port-out fraud, account takeover, and long-term privacy invasion.

2. Plaintiff is a California resident and a long-term AT&T customer of approximately

twenty (20) years. Over that relationship, AT&T required Plaintiff to provide, verify, and maintain highly sensitive personal, financial, and authentication information as a condition of receiving essential communications service.

3. AT&T publicly disclosed that customer data was unlawfully accessed and disseminated in connection with major security incidents announced in 2024. AT&T also acknowledged that leaked datasets contained authentic AT&T customer information and implemented forced passcode resets, confirming compromise risk for customer authentication data.

4. Plaintiff received an email settlement notice dated November 24, 2025, identifying Plaintiff as a Settlement Class Member (including membership in both AT&T 1 and AT&T 2 settlement classes) and warning that Plaintiff would be bound if Plaintiff did nothing.

5. Plaintiff's data was included in the compromised datasets associated with the 2024 AT&T incidents. The exposure includes permanent identity identifiers and account-authentication data (including, as applicable, Social Security number, date of birth, and account passcode/PIN) and/or telecommunications usage metadata and identifiers, creating ongoing, foreseeable risk that cannot be fully eliminated once disclosed.

6. Plaintiff seeks statutory damages (where available), actual damages, compensatory and consequential damages, restitution and disgorgement, declaratory relief, and injunctive relief to prevent continuing harm and to compel reasonable security measures proportionate to the sensitivity of the data Defendants collected, retained, and exposed.

7. Plaintiff seeks narrow, as-applied relief to prevent Defendants from enforcing any purported class settlement release against Plaintiff where Plaintiff received notice after the opt-out deadline, promptly attempted exclusion by mail, and received no determination of opt-out

status. Plaintiff has also pursued relief in the MDL settlement forum to obtain a definitive opt-out/release determination.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under federal law, including the Federal Communications Act, 47 U.S.C. § 222 and 47 U.S.C. §§ 206–207. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related California statutory and common-law claims because they arise from the same nucleus of operative facts.

9. In the alternative, to the extent diversity jurisdiction is satisfied, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a).

10. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201–2202.

11. Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in Contra Costa County within this District, a substantial part of the effects of Defendants' conduct were felt in this District, and Defendants transact substantial business and provide telecommunications services to consumers in this District.

12. Plaintiff does not challenge telecommunications rates or network management. Plaintiff seeks relief for Defendants' collection, retention, safeguarding, and disclosure failures relating to consumer personal information and account authentication/identity data.

13. **Divisional Assignment.** This action arises in Contra Costa County because a substantial part of the events and resulting harms occurred in Contra Costa County. Assignment to the San Francisco or Oakland Division is therefore proper under Civil L.R. 3-2(c) and 3-2(d).

## III. PARTIES

14. Plaintiff Dartez is a natural person and resident of California.

15. Defendant AT&T Inc. is a Delaware corporation with its principal place of business in Texas. Defendant AT&T Inc. exercised control over, and benefited from, the privacy, data-retention, account-authentication, and security policies and practices implemented across the AT&T enterprise, including the standards governing customer identity data, account access controls, and incident response. Upon information and belief, AT&T Inc. directed, approved, and/or ratified the policies, systems, and security practices that resulted in the unauthorized access, disclosure, and ongoing risk alleged herein.

16. Defendant AT&T Services, Inc. is an affiliated entity responsible for customer operations, billing, authentication processes, data retention practices, privacy and security controls, and/or the management of customer data systems for AT&T services.

17. Defendant AT&T Mobility LLC is a telecommunications carrier that provides mobile telecommunications service to consumers and, upon information and belief, is the carrier entity associated with Plaintiff's AT&T wireless account and customer proprietary network information ("CPNI"). Defendant AT&T Mobility LLC is responsible for compliance with the privacy and confidentiality duties imposed by 47 U.S.C. § 222 and for the violations alleged herein.

18. At all relevant times, Defendants acted jointly and through their officers, employees, agents, contractors, and/or affiliates in collecting, retaining, and safeguarding customer identity and authentication data, implementing account security and passcode processes, and handling incident response and customer communications relating to the incidents at issue. Each Defendant is responsible for the acts and omissions alleged herein to the extent it owned, controlled, maintained, processed, or benefitted from the compromised systems and data.

## IV. FACTUAL ALLEGATIONS

### A. AT&T's Collection and Retention of Highly Sensitive Customer Data

19. Over approximately two decades, AT&T collected, stored, used, and retained Plaintiff's personal information, including, but not limited to:

a) Full legal name and identity profile data;

b) Social Security number (full and/or last four);

c) Date of birth;

d) Address history;

e) Email address;

f) Personal and historical telephone numbers;

g) Billing Account Number and account identifiers;

h) Account PINs, passcodes, and security questions/answers;

i) Bank account information and/or stored payment tokens;

j) Device identifiers, including IMEI;

k) Call detail records and interaction metadata;

l) Multi-line household account relationships.

20. Plaintiff is a subscriber/customer of AT&T telecommunications service. Plaintiff's account and service records include customer proprietary network information ('CPNI'), including information relating to the quantity, technical configuration, type, destination, location, and amount of use of telecommunications services, and information contained in billing and service records.

21. Defendants failed to protect the confidentiality of Plaintiff's CPNI and related

customer information by failing to implement and maintain reasonable safeguards for account authentication and access controls, resulting in unauthorized access to and disclosure of protected telecommunications customer information.

22. This combined dataset is sufficient to enable identity theft, SIM-swap fraud, port-out fraud, account takeover, and targeted social-engineering attacks. It also exposes private affairs and communications patterns.

23. The exposure of Social Security numbers, dates of birth, authentication credentials, billing identifiers, and household account relationships creates a foreseeable and ongoing risk of fraud and identity misuse because these identifiers are permanent or difficult to rotate, and their combined exposure materially increases the likelihood of misuse.

### B. Breach Timeline and AT&T's Knowledge

24. On information and belief, unauthorized actors accessed and/or obtained AT&T customer data for an extended period prior to public disclosure.

25. In or around March 2024, AT&T publicly acknowledged that a dataset circulating online contained authentic AT&T customer information and that customer data had been unlawfully accessed and disseminated.

26. In 2024, AT&T also disclosed a separate incident involving unauthorized access to additional customer information, including telecommunications-related metadata for certain customers.

27. Plaintiff was an AT&T customer during the relevant period and received a settlement notice email dated November 24, 2025 identifying Plaintiff as a member of the AT&T 2 settlement class. Upon information and belief, the AT&T 2 incident involved unauthorized access to and/or disclosure of telecommunications customer records and usage-related

information associated with Plaintiff's account, including information constituting customer proprietary network information ("CPNI").

28. AT&T's incomplete disclosures and delays prevented customers from taking timely protective measures and extended the window of risk.

**C. What AT&T Should Have Done (Reasonable Security Measures)**

29. Given the sensitivity of the data it collected and retained, AT&T was required to implement reasonable security procedures and practices appropriate to the nature of Plaintiff's information, including:

a) Data minimization and retention limits for Social Security numbers, dates of birth, and authentication data;

b) Encryption, tokenization, and segmentation of sensitive identifiers;

c) Hardened SIM-swap and port-out verification protocols;

d) Continuous monitoring, logging, and anomaly detection for access events and bulk exfiltration indicators;

e) Vendor and cloud security controls aligned to the sensitivity of telecommunications customer data;

f) Timely, complete, and actionable breach notification.

30. Defendants failed to implement and maintain reasonable safeguards proportionate to the sensitivity of the data at issue.

**D. Ongoing Circulation and Re-Aggregation of Previously Compromised AT&T Customer Data (Newly Discovered)**

31. The harm from Defendants' security failures is ongoing because compromised

identity identifiers and authentication-related data cannot be fully "made safe" once exposed and are predictably reused, resold, and re-aggregated over time for identity theft, account takeover, SIM-swap attempts, and targeted exploitation. Defendants' failures therefore impose continuing mitigation burdens and continued risk on Plaintiff long after initial disclosure. Public reporting and cybersecurity-source disclosures after the initial incident have described renewed circulation and resale of AT&T-related datasets containing the same categories of customer identifiers, confirming that the exposure risk is ongoing and not confined to a single point in time.

32. Plaintiff will attach exhibits reflecting post-incident reporting and cybersecurity source disclosures describing continued circulation and re-aggregation of AT&T-related datasets, which Plaintiff pleads to show foreseeability, ongoing risk, and continuing harm.

**E. Plaintiff's Injuries and Damages**

33. Plaintiff suffered concrete and particularized injuries, including:

a) Loss of control over highly sensitive personal information;

b) Increased and ongoing risk of identity theft and account takeover;

c) Time spent securing accounts, monitoring credit, implementing fraud prevention, and protecting household line users;

d) Emotional distress caused by permanent exposure of identity data and heightened account-takeover risk.

34. As of the filing of this Complaint, Plaintiff has expended substantial time on fraud prevention and mitigation measures necessitated by the exposure, including securing accounts and monitoring for misuse.

35. Plaintiff's mitigation time constitutes concrete economic injury, including time spent

reviewing financial activity, strengthening authentication, placing credit protections, and implementing measures to reduce SIM-swap and account-takeover risk.

36. As a direct result of Defendants' conduct, Plaintiff has suffered present, concrete economic injury because Plaintiff has been forced to divert time and resources from productive activities to mitigate a non-speculative risk of identity theft, account takeover, and SIM-swap/port-out fraud. The burden is ongoing because the exposed identifiers are permanent or difficult to change, requiring continued monitoring and protective measures month after month.

**NOTICE FAILURE AS APPLIED / LATE OPT-OUT FACTS**

**(Settlement Non-Waiver)**

37. The settlement opt-out deadline was November 17, 2025.

38. Plaintiff received the settlement notice email dated November 24, 2025 after the stated opt-out deadline of November 17, 2025 had already passed. The notice warned that Plaintiff would be bound if Plaintiff did nothing.

39. Plaintiff did not receive constitutionally adequate notice in time to meaningfully exercise opt-out rights. Any notice transmitted was ineffective as applied, including due to timing and lack of a meaningful opportunity to opt out before enforcement of any release.

40. Plaintiff promptly prepared and mailed a written opt-out request dated November 25, 2025, shortly after receiving the notice email.

41. Plaintiff received no acknowledgment, response, or determination.

42. Plaintiff mailed a second written demand dated January 15, 2026, again requesting recognition of a late opt-out and a determination of Plaintiff's status.

43. To date, Plaintiff has received no acknowledgment and no determination of Plaintiff's opt-out status.

44. Plaintiff disputes that email transmission alone constitutes "best notice practicable" or a knowing, voluntary waiver of individual rights where (i) Plaintiff received notice after the opt-out deadline, (ii) Plaintiff promptly attempted exclusion by mail, and (iii) no determination was provided.

45. The permanent nature of the exposed identity and authentication data and the foreseeable likelihood of reuse and exploitation over time confirm that Plaintiff's harm and risk continued after the opt-out deadline, further underscoring the absence of a knowing and voluntary waiver by Plaintiff.

46. Plaintiff does not seek to modify any class settlement agreement or supervise settlement administration generally. Plaintiff seeks only an as-applied declaration that any purported release cannot be enforced against Plaintiff due to constitutionally inadequate notice and lack of knowing waiver.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Violation of Federal Communications Act – Privacy of Customer Information/CPNI**
(47 U.S.C. § 222; 47 U.S.C. §§ 206–207)

47. Plaintiff incorporates paragraphs 1 through 46 as though fully set forth herein.

48. Defendant AT&T Mobility LLC is a telecommunications carrier that provided telecommunications service to Plaintiff and possessed Plaintiff's customer proprietary network information ("CPNI"). Defendants AT&T Inc. and AT&T Services, Inc. acted on behalf of, and in coordination with, AT&T Mobility LLC with respect to the customer-data systems, authentication/account-access practices, and security policies at issue, including practices governing confidentiality and access to Plaintiff's CPNI.

49. Under 47 U.S.C. § 222, Defendants owed Plaintiff duties to protect the confidentiality

of Plaintiff's CPNI and to refrain from disclosing, permitting access to, or allowing unauthorized use of Plaintiff's individually identifiable CPNI except as permitted by law or with customer approval.

50. Defendants breached those duties by failing to implement and maintain reasonable safeguards and controls for Plaintiff's customer information and account access/authentication systems, thereby permitting unauthorized persons to obtain access to, and/or receive disclosure of, Plaintiff's protected customer information.

As a direct and proximate result of Defendants' violations, Plaintiff suffered damages, including loss of privacy, emotional distress, and consequential harm. Pursuant to 47 U.S.C. § 206, Defendants are liable for the full amount of damages sustained in consequence of the violation.

51. Plaintiff elects to pursue this claim in this Court under 47 U.S.C. § 207 and does not pursue duplicative administrative remedies before the Federal Communications Commission for the same damages.

52. Plaintiff seeks damages pursuant to 47 U.S.C. § 206, and such other relief as is available under the Federal Communications Act and deemed just and proper by the Court.

## SECOND CAUSE OF ACTION

**Violation of California Customer Records Act – Breach Notification Duties**
(Civ. Code § 1798.82; § 1798.84)

53. Plaintiff incorporates paragraphs 1 through 52 as though fully set forth herein.

54. Defendants conduct business in California and owned, maintained, and/or licensed computerized data that included "personal information" of California residents, including Plaintiff.

55. A breach of the security of Defendants' system occurred, and Plaintiff's personal information was, or was reasonably believed to have been, acquired by an unauthorized person.

56. Civil Code section 1798.82 required Defendants to provide Plaintiff a breach notification following discovery or notification of the breach.

57. Plaintiff never received a breach notification compliant with Civil Code section 1798.82. Plaintiff did not receive a timely, standalone breach notice providing actionable information about the breach, the categories of personal information involved, and steps reasonably necessary to mitigate foreseeable identity-theft and account-takeover harms.

58. The only email notice Plaintiff can confirm receiving was a class settlement notice dated November 24, 2025 (sent in connection with the settlement process), not a timely, standalone breach notification from Defendants that complied with Civil Code section 1798.82.

59. By failing to provide Plaintiff a timely and compliant breach notification required by Civil Code section 1798.82, Defendants impaired Plaintiff's ability to promptly take protective measures against foreseeable identity theft and account-takeover harms.

60. Plaintiff was injured as a result of Defendants' violations, including loss of control over personal information, increased risk of misuse, and the time and burden of mitigation measures reasonably undertaken in response to the exposure.

61. Pursuant to Civil Code section 1798.84, Plaintiff seeks damages and injunctive relief to prevent continuing violations and to require compliance with California's customer records and breach notification obligations.

## THIRD CAUSE OF ACTION

**Violation of the California Consumer Privacy Act**
(Cal. Civ. Code § 1798.150)

62. Plaintiff incorporates paragraphs 1 through 61 as though fully set forth herein.

63. Defendants were required to implement and maintain reasonable security procedures

and practices appropriate to the nature of Plaintiff's information, including Social Security numbers, dates of birth, authentication credentials, and account identifiers.

64. Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature of Plaintiff's information. This failure was a substantial factor in the unauthorized access and exfiltration, theft, or disclosure of Plaintiff's nonencrypted and nonredacted personal information.

65. Plaintiff suffered injury and harm as a result, including loss of control of personal information, time and money spent on mitigation, and continuing risk of identity theft and account takeover.

66. Plaintiff provided written notice to Defendants regarding ongoing privacy and security failures and demanded corrective action. The violations alleged are ongoing and continuing, including ongoing retention of sensitive identifiers and the ongoing risk created by failure to render exposed data unusable.

67. Plaintiff seeks statutory damages (in the alternative), actual damages, declaratory and injunctive relief as available, and such other relief as the Court deems proper.

## FOURTH CAUSE OF ACTION

**(Negligence)**

68. Plaintiff incorporates paragraphs 1 through 67 as though fully set forth herein.

69. Defendants owed Plaintiff a duty to exercise reasonable care in collecting, storing, retaining, and protecting Plaintiff's sensitive personal information, including identity and authentication data, and in designing and implementing security controls commensurate with the foreseeable risk of SIM-swap, account takeover, and identity theft.

70. The duty owed by Defendants included compliance with objectively reasonable,

industry-standard data-security practices applicable to telecommunications providers, particularly with respect to the protection of identity data, authentication credentials, and safeguards designed to prevent SIM-swap fraud, port-out fraud, and account takeover—risks that are well known, foreseeable, and inherent in the collection and retention of such information.

71. Defendants breached that duty by, among other things, failing to implement reasonable security procedures and practices; failing to minimize and limit retention of sensitive identifiers; failing to adequately secure authentication data; and failing to timely and fully disclose actionable details to permit customers to mitigate risk.

72. Defendants' breach was a substantial factor in causing Plaintiff's injuries. The exposure of permanent identifiers and authentication data foreseeably results in ongoing fraud risk, repeated re-circulation, and targeted exploitation.

73. Plaintiff suffered damages as alleged herein, including mitigation costs and time, heightened risk of identity theft and account takeover, and emotional distress.

## FIFTH CAUSE OF ACTION

**Negligence Per Se**
(Cal. Civ. Code § 1798.81.5)

74. Plaintiff incorporates paragraphs 1 through 73 as though fully set forth herein.

75. Cal. Civ. Code § 1798.81.5 requires a business that owns, licenses, or maintains personal information about a California resident to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

76. Plaintiff is within the class of persons the statute was designed to protect: California residents whose personal information is collected and maintained by a business.

77. The harm suffered by Plaintiff is the type the statute was designed to prevent: unauthorized access, identity theft risk, and misuse of personal information.

78. Defendants violated Cal. Civ. Code § 1798.81.5 by failing to implement and maintain reasonable security procedures and practices appropriate to the sensitivity of Plaintiff's information, including identity and authentication data.

79. Defendants' statutory violations were a substantial factor in causing Plaintiff's damages and ongoing risk as alleged herein.

## SIXTH CAUSE OF ACTION

**Invasion of Privacy / Intrusion Upon Seclusion**
(California Constitution, Article I, § 1; Common Law)

80. Plaintiff incorporates paragraphs 1 through 79 as though fully set forth herein.

81. California recognizes a constitutionally protected right to privacy under Article I, Section 1 of the California Constitution, as well as a common-law cause of action for intrusion upon seclusion where a defendant intentionally intrudes into a private place, conversation, or matter in a manner highly offensive to a reasonable person. This protection extends to sensitive personal information, including identity data, authentication credentials, and communications-related metadata, particularly where disclosure enables identity theft, account takeover, or surveillance of private affairs.

82. Defendants knowingly collected and retained highly sensitive identity and authentication data and failed to implement reasonable safeguards despite foreseeable risk of unauthorized access and misuse, resulting in exposure of Plaintiff's private information in a manner highly offensive to a reasonable person.

83. Plaintiff had a reasonable expectation of privacy in highly sensitive identity, authentication, and account-linked data held by Defendants, including Social Security numbers, dates of birth, account passcodes, device identifiers, and household account relationships.

84. Defendants' conduct resulted in unauthorized exposure and dissemination of

Plaintiff's private affairs and personal data. The nature of the information—identity and authentication data linked to household accounts—creates an objectively serious invasion of privacy because it enables account takeover and targeted exploitation.

85. The invasion would be highly offensive to a reasonable person because it involves exposure of permanent identity identifiers and authentication credentials that cannot be made safe once disclosed, and post-incident reporting indicates continued circulation and resale of AT&T-related datasets, increasing the risk of targeted misuse.

86. Plaintiff suffered harm as a result, including loss of privacy, mitigation burden, and emotional distress.

## SEVENTH CAUSE OF ACTION

**Unfair Competition Law**
(Bus. & Prof. Code § 17200)

87. Plaintiff incorporates paragraphs 1 through 86 as though fully set forth herein.

88. Defendants engaged in unlawful, unfair, and fraudulent business acts and practices by, among other things:

a) Failing to implement reasonable security procedures and practices for sensitive customer data as required by California law;

b) Retaining highly sensitive identity and authentication data beyond what was reasonably necessary;

c) Representing—expressly and/or impliedly—that customer data would be safeguarded while failing to maintain reasonable safeguards;

d) Exposing consumers to continuing risk of identity theft and account takeover, including by failing to contain and remediate the harms where post-incident reporting indicates continued circulation and resale of AT&T-related datasets.

89. Defendants' practices are unfair because they cause substantial consumer injury not reasonably avoidable by consumers, and the injury outweighs any countervailing benefits.

90. Defendants' practices are fraudulent because they are likely to deceive reasonable consumers regarding the safety and handling of sensitive personal information and the adequacy of security measures.

91. Plaintiff seeks injunctive relief to prevent ongoing unfair practices and to require reasonable security, minimization, and retention controls. Plaintiff also seeks restitution to the extent Plaintiff lacks an adequate remedy at law to restore money wrongfully obtained for services marketed and sold under an implied promise of reasonable data security but delivered without reasonable safeguards.

## EIGHTH CAUSE OF ACTION

### Breach of Implied Contract

92. Plaintiff incorporates paragraphs 1 through 91 as though fully set forth herein.

93. Under California law, an implied-in-fact contract arises from the conduct of the parties, including where a consumer provides personal information and payment in exchange for services under circumstances demonstrating a mutual understanding that the information will be reasonably safeguarded. California recognizes such implied contractual duties where a business collects sensitive personal information as a condition of service and represents, expressly or impliedly, that reasonable security measures will be employed. This implied contractual obligation is further informed by California Civil Code sections governing contractual assent and performance, including Civil Code §§ 1550, 1584, and 1619.

94. Plaintiff provided personal information and paid for services with the reasonable

expectation, and under an implied agreement, that Defendants would safeguard Plaintiff's sensitive data using reasonable security measures.

95. Defendants breached the implied contract by failing to implement reasonable safeguards and by allowing exposure and continued circulation of Plaintiff's sensitive personal information.

96. Plaintiff suffered damages and injuries as a result, including loss of the benefit of the bargain, mitigation time and costs, and continuing risk of identity theft and account takeover.

## NINTH CAUSE OF ACTION

### Breach of Express Contract

97. Plaintiff incorporates paragraphs 1 through 96 as though fully set forth herein.

98. California Civil Code § 1550 provides that a contract exists where there is lawful consent, consideration, and a lawful object. Defendants' customer agreements, privacy commitments, and data-security representations constitute express contractual promises that customer information would be protected using reasonable safeguards. Defendants breached those express contractual obligations by failing to implement and maintain reasonable security procedures appropriate to the nature of the data collected.

99. Plaintiff entered AT&T's customer service agreement(s) governing Plaintiff's account(s), including AT&T's privacy and security commitments applicable during Plaintiff's service relationship (the "AT&T Customer Agreement"). Those agreements and commitments include express and/or incorporated promises concerning the safeguarding of customer information and account access/authentication.

100. The AT&T Customer Agreement incorporates, and/or is accompanied by,

AT&T's privacy policy, security commitments, and customer account protection representations, including commitments concerning safeguarding customer information and account access/authentication. Plaintiff provided personal information and paid for service in reliance on these promises, which formed part of the consideration and benefit of the bargain. Defendants breached these express contractual promises by failing to implement and maintain reasonable safeguards and controls appropriate to the sensitivity of the customer information and authentication data Defendants collected, retained, and used.

101. Defendants breached those express commitments by failing to maintain reasonable safeguards, resulting in exposure of Plaintiff's sensitive information.

102. Plaintiff suffered damages as a result, including mitigation costs, time, and loss of the benefit of the bargain.

## TENTH CAUSE OF ACTION

### Breach of Confidence

103. Plaintiff incorporates paragraphs 1 through 102 as though fully set forth herein.

104. California law recognizes a cause of action for breach of confidence where confidential information is disclosed or misused in violation of a duty arising from the circumstances of disclosure. Such a duty arises where a defendant obtains sensitive personal information under conditions creating an expectation of confidentiality, including where the information is required for essential services and maintained exclusively within the defendant's control.

105. Defendants obtained Plaintiff's sensitive personal information under

circumstances creating a duty of confidence, including because Defendants required the information for service and maintained exclusive control over the systems storing that information.

106. Defendants breached the duty of confidence by failing to safeguard Plaintiff's information, resulting in unauthorized disclosure and continuing circulation of confidential personal information.

107. Plaintiff suffered harm as alleged herein.

## ELEVENTH CAUSE OF ACTION

### Unjust Enrichment

108. Plaintiff incorporates paragraphs 1 through 107 as though fully set forth herein.

109. Under California law, a claim for unjust enrichment is treated as a claim for restitution, grounded in principles of quasi-contract and equity, where a defendant has been unjustly enriched at the expense of another. Restitution is appropriate where a defendant retains benefits obtained through wrongful conduct, including payments received under circumstances where reasonable data security was promised but not provided. Restitution is authorized under California Civil Code §§ 2223 and 2224 where a party gains a benefit through wrongful conduct or breach of duty.

110. This cause of action is pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d), to the extent Defendants contend that no enforceable express or implied contract governs the subject matter of Plaintiff's claims.

111. Defendants received benefits from Plaintiff, including payments for services and the commercial value of Plaintiff's data, while failing to provide the reasonable data security promised and expected.

112. It would be unjust for Defendants to retain those benefits were Defendants' failures caused exposure and continuing circulation of Plaintiff's sensitive information and required Plaintiff to spend time and resources mitigating ongoing risk.

## TWELFTH CAUSE OF ACTION

### Declaratory Relief (28 U.S.C. § 2201)

113. Plaintiff incorporates paragraphs 1 through 112 as though fully set forth herein.

114. An actual controversy exists as to whether Defendants may assert any settlement release against Plaintiff given Plaintiff's receipt of notice after the opt-out deadline and Plaintiff's prompt attempt to opt out.

115. Plaintiff has sought relief in the MDL settlement forum supervising the settlement by filing a motion requesting recognition of Plaintiff's late opt-out and/or an as-applied determination that the settlement release is unenforceable against Plaintiff, and Plaintiff pleads this count solely to preserve Plaintiff's rights pending that determination.

116. Plaintiff seeks only narrow, as-applied declaratory relief to prevent enforcement of any release against Plaintiff absent constitutionally timely notice and a meaningful opportunity to opt out.

117. Plaintiff does not seek to modify settlement terms for other class members and seeks relief only to preserve Plaintiff's individual rights pending final determination of opt-out/release enforceability.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and award:

A) Actual damages, compensatory damages, and consequential damages in an amount according to proof;

B) Statutory damages where available and permitted by law;

C) Restitution (as available) and injunctive relief under Bus. & Prof. Code § 17200;

D) Public injunctive relief requiring Defendants to implement reasonable security procedures and practices appropriate to the nature of the information, including minimization and retention controls for identity and authentication data, strengthened SIM-swap/port-out protections, and improved security monitoring;

E) Declaratory relief as requested herein;

F) Pre-judgment and post-judgment interest as allowed by law;

G) Costs of suit;

H) Such other and further relief as the Court deems just and proper.

I) Damages recoverable under 47 U.S.C. § 206 for violations of the Federal Communications Act, and all other damages according to proof;

J) Injunctive relief as authorized by Cal. Civ. Code § 1798.84(e) and other applicable law, requiring compliance with reasonable security and breach-notification obligations.

K) Reasonable attorneys' fees and litigation costs where recoverable by statute or other applicable law.

## VII. JURY DEMAND

Plaintiff respectfully demands trial by jury.

DATED: February 25, 2026

Respectfully Submitted,

By: G.D. [signature]

**Gary Dartez, Plaintiff in Pro per**
20 E 16th St. Unit #203
Antioch, CA 94509
Gary.Dartez.Email@gmail.com